Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. Good morning. This is Judge Wilson in Tampa, Judge Grant is in Atlanta, and Judge Shelflight is in Jacksonville. And we have four appeals that are scheduled for oral argument this morning. I would advise counsel that we have read the briefs, and we have examined the relevant parts of the record if that will assist you in narrowing the focus of your arguments for the time that you have available. Ms. Geddes, the courtroom deputy, is the timekeeper, and she will let you know when the red light is on. And she will also give you a two-minute warning. She will let you know when you have two minutes left for your argument. So it looks like we're ready to proceed with the first argument this morning. This is Absolute Activist Value Master v. Susan Elaine Devine. Ian Michael Comiskey is here for the appellate, Devine. Duane Antonio Robinson is here for the appellees. And Mr. Comiskey, are you ready to proceed with your argument? Yes, good morning, Your Honor. Morning. Your Honor, Ian Comiskey again with Carl Sharple, representing Susan Elaine Devine. We're seeking reversal of district court order that precludes Ms. Devine from using critical information. That's the district court's own term, obtained during discovery and civil rigor litigation, which was voluntarily dismissed by the appellees in this action. As the court is aware, the information we're seeking is currently held by the clerk of the court of the Middle District. The information is needed for Ms. Devine to defend herself in an upcoming Swiss criminal proceeding scheduled to begin in a little over five weeks, January 26th. Ms. Devine herself has been summoned to appear on February 2nd. The current status of the matter in Switzerland... Mr. Wilson, does that mean charges have already been filed against Ms. Devine in a Swiss court? No, there have never been any charges filed, either in the United States or in Switzerland, against Ms. Devine. Ms. Devine's current status is of a third party, similar in the United States, Your Honor, to an ancillary hearing proceeding, a person who makes a claim in a forfeiture action in the United States. The Swiss procedure is a little different, where everything is done in one proceeding, so you don't have a trial, and then an ancillary hearing procedure, so everything will be done before the Swiss tribunal. She doesn't need the confidential information to use the confidential information unless charges are filed in the future, though, right? I'm sorry, I could not hear the court's question. Could you repeat it? Isn't it a little premature? If the charges have not been filed against her yet, didn't the court provide a mechanism by which she could request confidential documents for her defense if it was necessary in the future? It's not premature for a number of reasons, Your Honor. As we noted in our 28J presentation, we've already asked the Swiss tribunal, which is scheduled for trial in five weeks, to release and ask for the release of the confidential materials. The court held that because of the protector voter entered here, we could not make a sufficient showing in Switzerland to ask for the release of materials, so we're in an impossible position. We've got a trial in five weeks. We were subject to a return and destroy provision, which means we don't have the documents. The only documents are with the clerk. We can't make a sufficient showing to the Swiss tribunal to get the Swiss tribunal interested in asking for the documents, and if the documents aren't produced, Ms. Devine's in position where right now it's just money. $20 million of her assets are restrained, and if the documents are not released, the $20 million could be ruled against her. It could be more than $20 million. Plus, as the court is aware, after the funds dismissed the case, they were able to get a criminal proceeding organized. Mr. Kaminsky. Yes, sir. How did the district court have jurisdiction in this case? There was a notice of dismissal under rule 41A1A, which automatically ended the case, the whole action. The district judge entered an order, but the district judge didn't even have power to enter that order. A notice of dismissal is so how was it that the district court had any power at all to do anything? This court has a long line of authority, Ron, which was cited in our jurisdictional papers, that the court, for instance, ruled on a legal fee motion, that the court can rule on issues after the case is dismissed. The Supreme Court has held that we can entertain applications for costs that are bound up in the case, attorney's fees, determinations, things of that sort. But this is a contract that the parties made and the court endorsed that had to do with protection of documents. It's got nothing, no parallel to attorney's fees or costs or anything else that the Supreme Court has recognized. Your Honor, in our jurisdictional briefing, we cited a number of cases, including most recently, a Fourth Circuit decision where the parties are able to litigate the scope of a protective order when you need relief if the litigation is concluded. I understand, but they don't address the jurisdictional issue the way it ought to be addressed in this case. Well, we think that Thomas v. Blue Cross and Blue Shield controlled this and says that the courts can issue orders after the litigation is concluded and opens the door for that. And we cited other authorities from other jurisdictions where exactly that happened. Otherwise, how are we to get relief and how are we to defend ourselves in Switzerland against everything that's happened in this litigation? We're just, if we can't get these documents, she might well lose the litigation. She may lose her assets. She may lose her liberty. And the court has to have an ability to reach the issue. And the Thomas v. Blue Cross case acknowledges that and the other cases we cited and this court agreed, as I understood it, there was jurisdiction, at least preliminarily, that there had to be some way to get relief. There was not a word about jurisdiction in any of the briefs in this case, not a word about jurisdiction in any of the things that happened after the case was dismissed. Well, let me try to answer that. I have a record for the word of jurisdiction. I couldn't find it. Judge, there was a jurisdictional briefing at the beginning of the court. No, you're correct. Nobody ever said to the judge, Judge, you don't have any power to enter anything. No, nobody raised in the lower court that there was any issue in providing a ruling and a means for relief for a protective order if there was a voluntary dismissal and there was no way to seek a modification before the dismissal. This happened as the court is aware, the appellees wouldn't take discovery, walked away from the litigation. There was no way to seek that relief before the dismissal. There has to be a vehicle and we think the court has outlined that vehicle. Well, there was a way to prevent the dismissal. The dismissal could have been prevented very easily, in which case if they wanted to dismiss the action, they'd have to get order of court and the court would condition the dismissal. We understand that nothing whatsoever was done to preserve the court's jurisdiction. Your Honor, we understood this was a rule 41 dismissal as of right. There was no way to stop the voluntary dismissal. There had not been an answer. Oh, there is. There are lots of ways you can file a motion for a summary judgment to do this. Your Honor, our understanding under rule 41 that they had a right to voluntary dismiss. It's not like the parties didn't look at it. There was no answer in the case. We never even got to pass the motion to dismiss stage when they dismissed the litigation. So under 41, I believe they won. They had a right to dismiss. That left us in a position where there had to be some vehicle to protect us after the dismissal. We filed it. The district court did not say it didn't have jurisdiction. We believe this court does have jurisdiction. Nobody said a word in the district court about jurisdiction. No. If this case had never been brought, your client would have had no way to get these documents that she's seeking, is that correct? If the case had not been brought, I think that's correct, Your Honor. If the case hadn't been brought, but we didn't, remember, we didn't take any discovery. It was discovered by the, all the discoveries by the appellees. Documents were marked as confidential. It was stipulated. There was a stipulated protective order, so there was no contest over it. So we think there was the wrong way. There was an improper way of, you know, improper standard review to start with. I'm glad you said that because that was a question. The court in Chiquita seemed to suggest that there were different standards for stipulated protective orders versus orders entered for good cause. It seems in the order that perhaps the judge here indicated that it was both. First of all, which one do you think it was, and do you think it matters to the analysis whether the order was stipulated or for good cause? Yes, we think it does matter as we read Chiquita. We think it was stipulated. The order said it was stipulated. The district court adopted it as stipulated. The order in Chiquita actually had Rule 26C at the top of the stipulated order. Our order said stipulated, and the court cited 26C. There was certainly no dispute over the order, and we think that's what the court was getting at in Chiquita, that there's no dispute over the order, and there wasn't because the documents, which we're now fighting over, weren't even marked then. They hadn't been produced in discovery. That this comes in, then, the scope of the court's case in Chiquita, and therefore, it's the burden of the funds to show why the documents should not be released, and the only thing they've been able to rely upon in this whole proceeding below and here is they entered into litigation saying they would be able to protect the documents, and the case laws, the court knows that's not enough. The court cited, this court in Chiquita cited a third circuit case because the stipulated order is over-inclusive. It would protect everybody. Therefore, the fact that the order was stipulated, and the fact that the order... In Chiquita, there was no finding of cause for ordering the which makes this case a little different, doesn't it? It's not much. It's a nuance, if anything. The Chiquita order said Rule 26C on the very first line of the stipulated order. This court got an order it said stipulated, and entered a one-page motion that said Rule 26C, and there certainly was no dispute over the order, which we think is at the bottom of Chiquita, and what the court was getting at. Without that dispute, it's the party who's opposing our request to release the appellees that has the burden, and the court did not did not shift that burden or put that burden on the appellees, who again are relying on the fact that they entered the jurisdiction, and they're getting a protective order. Every other fact in this case, including the concealment at the beginning of this private criminal complaint, the working with the Swiss, the materiality of the document when you have a 45-page private complaint, which doesn't get revealed until six months after the fact, with 90-some exhibits, the litigation conduct of walking away from the litigation when they got discovery, sent it to the Swiss, and we had no reciprocity, no parity. The fact that it's a related case in for her assets and really for her liberty in five weeks, in terms of changed circumstances, all revealed that the equities, whoever's burden was, were not balanced properly, and this court should order reversal and let us use the documents in Switzerland at the upcoming trial. I'm down to three seconds, so I will stop here. All right, Mr. Kaminsky, I think you have reserved some time for rebuttal, and we'll now hear from Mr. Robinson on behalf of Absolute. Morning. My name is Dwayne Robinson. I'm with Kozak Troop and Throckmorton. On behalf of the plaintiff at Pell East. Turn your volume up a little more. I'll try to talk louder. That help, Judge? Yep, that's good. All right. The trial court here did not abuse discretion by denying the Pell and Susan Define unfettered access to thousands of documents for an indeterminate period of time for years after the case below had ended. The trial court enacted the proper balancing within its discretion. It preserved the documents that she claims that she needs in the event that the Swiss courts or the Swiss prosecutors ever reversed their multiple decisions that have held that these documents have no relevance whatsoever to the Swiss proceedings. Any other decision would not only threaten the sanctity of protective orders, but also the comedy between nations. That's the comedy between our courts and the courts in Switzerland that have held these documents are irrelevant, as well as comedy with the Cayman Island courts, which allow these documents, the investor documents from Cayman Island companies to be produced under the auspices of a protective order that provided two things. One, that these documents would be treated as confidential within this case only, and two, they would be subject to the only parties in this case. If Ms. Define has this unfettered access to the documents, she intends, as she stated in her briefs, to file them in the Swiss proceedings, which would allow her ex-husband or so-called ex-husband, excuse me, and her ex-husband's standard here that the court is to apply. I would like to note for the court that this court is bound by the prior precedent rule. In the FTC versus Abbey 5 Protest case, this court held, and I'm going to quote, it is a cardinal rule of public review that a party may not challenge a ruling invited by that party. Here, if the court was below at document 697 on page four, Ms. Define argued to the court below that the burden of proof the show could cause was on herself. She can't come on appeal now and argue otherwise. In addition, in the Chiquita branch decision, the 11th Circuit entered a public decision, which again is final on this court. There, the 11th Circuit held that the Chicago Tribune case entered in 2001, a decade before this case was filed, established that a party seeking to modify a protected order entered with good cause has to be held with cause. However, if it's merely stipulated, then the party opposing the modification must show good cause. As Judge Wilson pointed out, in this order, the trial court, that's document number 63, the trial court explicitly said, I find that there's good cause to enter the confidentiality agreement. In fact, in fact, the trial court did precisely what this court instructed trial courts to do in Henry Alexander Grant and Company, and that's at 820 F2D 352. There in 1987, this court sanctioned and allowed trial courts within the circuit to adopt umbrella confidentiality orders when you have a complex litigation with huge amounts of confidential information. Therefore, this is precisely the type of good cause order that's allowed in this case. Your Honor, I just have a couple more, Your Honors, I have a couple more points, unless you have any questions. One point I want to emphasize here is that there is a highly deferential standard of review here, and Ms. Devine has not met that burden, neither to this court, nor to the magistrate judge, nor to the district court judge. Has she ever told them which of the 5,500 and so confidential documents she intends to use in Switzerland? She's never told us how she would use them in Switzerland. She's referred to impari delecto and unclean hands, but she's never told us whether those are valid offenses or criminal charges in Switzerland. And as my good colleague, Mr. Kulinski just commented, he admits and acknowledges that she is not subject to criminal charges in Switzerland. This escapade has been going on for nearly three years now over the propriety. What's the, Mr. Robinson, what's the status of the proceedings in the Swiss court right now? Your Honor, the status as we understand it is there are proceedings against, not Ms. Devine, but against her so-called ex-husband, Orin Hom, and his co-conspirators. That's the only, that's the only charges that we are aware of that are pending in Switzerland. But at some point in the future, if there are charges against Ms. Devine, the court in this case provided a mechanism by which she could request confidential documents for her defense. Is that correct? That is correct, Your Honor. What is that mechanism? That mechanism, Your Honor, is through the MLAP procedure that the Swiss courts have used in this case at multiple times as the record indicates. We've cited in our brief that many times where the Swiss courts have sent requests to the United States and asked for documents from this particular case or relating to the proceedings against Mr. Hom and or his co-conspirators. And so that's the procedure that has been outlined, Your Honor, and it has been used. And there's no evidence that that procedure is not sufficient to meet the needs of Ms. Devine. But how does that work if the documents are destroyed after this litigation ends? Good question, Judge Brandt. Actually, what the trial court has ordered here, and I think a great showing of its discretion, it has ordered both the clerk of court, as well as my clients, to retain those confidential records until the Swiss proceedings are completed. And so there are two court orders, one that's within the court's possession, and then one that the plaintiffs themselves hold on to. But Judge Grant, as you may know, Ms. Devine would not have had these documents anyway if this lawsuit was filed. Mr. Kaminsky raises arguments suggesting that we filed this litigation in bad faith, that we were surreptitiously handing documents over to the Swiss courts. Not only did the trial court reject that argument, that ethical argument in denying the sanctions, this court confirmed the trial court's decision just a few months ago. There's simply no evidence that we sent any documents to the Swiss that were confidential. There was only one instance where the Swiss courts requested documents. Ms. Devine was given notice pursuant to the confidentiality order. She filed an emergency motion. There was full briefing, and the trial court denied it. Ms. Devine never appealed it. Another thing Ms. Devine never did, Your Honors, she never once, despite paragraph 12 in the confidentiality order, that allows her at any time to contest the confidentiality status. She's never gone to court and said, this document isn't confidential, that document's confidential. Now she comes to this court and says, give me relief, but she never asked for it below. Your Honor, we think that the record here is clear. It was unfair for Ms. Devine to move to modify the protective order one day before the deadline, after my client had already submitted to destroy all of her documents to reverse and allow her to use our documents in proceedings when we've destroyed her documents is the height of inequitability. And again, the trial court here struck the correct balance. The Swiss courts have said, we don't need this stuff. It's not relevant. Mr. Kaminsky's argument that he can't proffer for a foreign tribunal what it is the documents may show just doesn't pass the smell test. I will also make one other point that we discovered why she's aggressive because I wasn't part of the trial court proceeding below, is even in the two documents, the only two documents that Ms. Devine filed with the court to suggest that she needs documents in Swiss proceedings. One of those is the definition of Glenn Kennedy. If the last five or six pages, Your Honor, are pages that were not marked confidential by the plaintiffs. So in other words, Ms. Devine is reliant on non-confidential documents to assert that she needs the confidentiality protections waived by the documents. Your Honor, we asked the court to affirm because the standard review here is highly deferential and it's extremely limited. The trial court has extraordinary discretion in this matter and Ms. Devine is not there. Thank you, Your Honors. Thank you, Mr. Robinson. Mr. Kaminsky, you have reserved some time for rebuttal. I think I'm unmuted now. We can hear you now. Okay, thank you. Let me start with that the court can ask for the documents. We asked the Swiss Tribunal to make a request for the documents. We have a return and destroyed provision, which means we took it seriously. We returned everything. We didn't keep anything. Therefore, we could not make an adequate representation to the Swiss Tribunal through Swiss counsel and they said they can't ask for them because we didn't make an adequate disclosure of why we needed them. So wouldn't that argument have applied just as strongly to the documents that your friends on the other side turned over? Why could the Swiss know that they needed those but not the ones that you say they need? Well, because the district court judge assumed in this case and one of his other rulings that the Swiss were working hand in glove with the funds and that's what this record reflects. That the Swiss asked for certain documents. They knew were confidential. They got them. That other documents were turned over to assist the Swiss and we're in a different position. We didn't have the ability in that protective order unless there was a request from the Swiss to turn anything over. So now we have a return and destroyed position on top of it. We've returned the documents. They're in the clerk's office. We have no ability to inform the tribunal why they're necessary. The funds have us where they would want us so they can get an adverse order in Switzerland. We'll be back here two years from now when they're seeking to collect on an order unless we can defend ourselves. That's point one. That we're in an impossible position because of the return and destroy. An impossible position because we returned the documents. Impossible position because we cannot make a representation to this court about why we need the documents or the Swiss tribunal. Second with respect to whether the funds weighs the waiver argument with respect to Chiquita. Both the magistrate judge and the district court judge and none of the parties read this court's prior decision in the Chicago Tribune as leading to its decision in Chiquita. So before Chiquita came down and we filed a notice of supplemental authority. We put it on our reply brief. Everybody got it wrong. Whether it was clear or less clear or transparent or not transparent. Everybody in this case missed it before Chiquita. This court is entitled to correct an error of law. It's on appeal. We cited authority where this court has done it as a matter of practice on any number of occasions and the court got wrong both modifying the order among other things requiring us to return the documents and it got the burden of law. And what's the prejudice if we if you all we're looking for is parity in a proceeding in Switzerland. We want to be able to defend ourselves. We want to not have a 20 million dollar a 30 million dollar or 40 million dollar judgment. And if and as a matter of basic fairness Ms. Devine is fighting for her assets for her liberty because the funds as you know got a criminal investigation started directly against her after based on discovery that got in this case. We ask for parity. We ask for the order to be reversed. All right. Thank you Mr. Kaminsky and Mr. Robinson. Thank you your honor.